UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELITSA ELEONORA BELTRAN CARRERO, et al., | Case No. 20-cv-05522-DMR |
| Plaintiffs, | |
| v. | **ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| WILLIAM BARR, et al., | Re: Dkt. Nos. 3, 28 |
| Defendants. | |

Plaintiffs Yelitsa Eleonora Beltran Carrero ("Beltran"); her minor daughter, S. D. C. B ("S. C.").; and Marco Silveira filed this petition for a writ of mandamus to compel the return of Beltran and S. C. from Mexico to the United States after their alleged expulsion from this country. They subsequently filed a motion for a temporary restraining order. [Docket No. 3 ("Mot. for TRO").] Defendants United States Attorney General; United States Immigration and Customs Enforcement ("ICE"); United States Customs and Border Protection ("CBP"); and other government officials oppose the motion and now move for summary judgment. [Docket Nos. 18 (Defs.' Opp'n), 28 (Defs.' Mot.).] These motions are suitable for resolution without a hearing, and the parties agreed that the court could decide these motions on the papers pursuant to Civil Local Rule 7-1(b). For the following reasons, the motion for a TRO is denied. The motion for summary judgment is granted.

# I.     COMPLIANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 5.2

The court sealed Plaintiffs' original petition and motion for a temporary restraining order (Docket No. 1) for failure to redact the name and date of birth of S. C., a minor, pursuant to Federal Rule of Civil Procedure 5.2. That rule states in relevant part that "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's . . . birth date

United States District Court
Northern District of California

[or] the name of an individual known to be a minor, . . . a party . . . making the filing may include only . . . the year of the individual's birth [and] the minor's initials[.]"  Fed. R. Civ. P. 5.2(a).

Plaintiffs subsequently filed two versions of an "amended" petition (Docket Nos. 2 and 6), both of which were sealed for failure to comply with Rule 5.2.  Upon reviewing the docket in connection with these motions, the court finds that Plaintiffs still have not filed re-filed a copy of their petition that complies with Rule 5.2, as the attachments to the latest version of the amended petition still contain S. C.'s name.  [Docket Nos. 6-1 at ECF p. 1, 6-3 at ECF p. 1.]  Within seven days of the date of this order, Plaintiffs shall file a copy of their original petition and attachments that fully complies with Rule 5.2.  Failure to comply with this order may result in sanctions.

## II.    ALLEGATIONS IN THE PETITION

Plaintiffs make the following allegations in the petition: Silveira is a United States citizen. He is engaged to Beltran.  Beltran and her daughter, S. C., are citizens of Colombia.  Petition ¶ 2. Plaintiffs allege that Beltran and S. C. "entered the United States legally on valid tourist visas" and intended to return to Colombia on August 4, 2020 when their visas expired.  *Id*. at ¶ 8.  During her stay, Beltran met Silveira and they decided to marry.  Beltran and Silveira "tried to arrange a flight to Colombia so that [Beltran's] status would not expire," but as a result of the COVID-19 pandemic, flights from the United States to Colombia were grounded.  Beltran and S. C. thus faced the risk of overstaying their visas.  *Id*. at ¶ 9.

Plaintiffs went to the USCIS office in San Francisco, California to try to renew the visas but the office was closed.  *Id*. at ¶ 10.  They then drove to the port of entry in San Diego, California "in an attempt to get their visas extended."  Plaintiffs arrived at the San Ysidro Port of Entry and then "went through a harrowing experience" that ended with Beltran and S. C. "literally thrown into Mexico, even though they had no legal right to be there."  *Id*. at ¶¶ 12, 13.

The details of Plaintiffs' experience at the San Ysidro Port of Entry are set forth in a declaration by Beltran that is attached as an exhibit to the petition.  [Docket No. 6-3 (Beltran Decl.).]  Importantly, the declaration is neither dated nor signed under penalty of perjury.  *See id*. In relevant part, Beltran states that she, Silveira, and S. C. arrived in San Diego at 1:00 or 1:30 a.m. on August 1, 2020.  Unnamed officers took Plaintiffs into an office and took Beltran's

passport.  The officers subsequently removed Silveira from the office.  The officers began questioning Beltran and looked through her phone.  One of the officers "was very intimidating" and threatened to cancel Beltran and S. C.'s visas.  Hours passed.  Officers later told Silveira to leave and removed Beltran and S. C.'s belongings from his car.  The officers refused to allow Beltran to make any phone calls or use the restroom for hours.  The officers then took Beltran and S. C. to a different room where they eventually fell asleep.

The next morning, an officer told Beltran that the visas were canceled and that she was going to be "released on Mexico and that [they] would have to figure out what to do next or how to get to Colombia on [their] own."  Beltran and S. C. "were released in the Mexican border" and eventually located Silveira, who was also in Mexico.  Beltran states, "I'll be staying in Mexico alone with my daughter, we do not know anyone here, my only support right now is my boyfriend since we can't travel to Colombia."

In a separate undated declaration that is not signed under penalty of perjury, Silveira states that after arriving at San Ysidro, officers took him, Beltran, and S. C. into an office for questioning.  An officer eventually escorted Silveira to his car where he waited for three hours. Although Silveira states that he then "left and went to stay in a hotel in Tijuana to rest before [his] long drive back to San Jose," he does not explain how or when he entered Mexico.  Three hours later, an officer called Silveira and told him that "they were not going to be deporting them to Colombia, but were going to release them into Mexico" and "then took them to the other side of the norder [sic] into Mexico."

Based on the foregoing allegations, Plaintiffs seek relief pursuant to the Mandamus & Venue Act of 1962 ("MVA"), 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), in the form of issuance of a writ of mandamus requiring Defendants to allow Beltran and S. C. to re-enter the United States pursuant to a valid visa.  Petition ¶¶ 15, 16; ECF p. 15 (Prayer).[1]

---

[1] Plaintiffs also allege that Beltran and S. C. were deprived of their due process rights, illegally subjected to expedited removal proceedings, unlawfully compelled to testify against themselves, and deprived of their right to counsel.  However, the only substantive relief they seek is the issuance of a writ of mandamus, as set forth above.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.     Plaintiffs' Motion**

Plaintiffs move for an emergency temporary restraining order and/or preliminary injunction "enjoining [Defendants] from preventing Petitioner's [sic] entry into the United States." Mot. for TRO at ECF p. 2.  Their motion repeats the factual allegations from the petition.  *Id*. at ECF pp. 2-4.  Plaintiffs argue that "Mexico is a particularly risky place for Petitioners during the COVID-19 pandemic" and attach an unauthenticated document to their motion that describes "the risk factors for hospitalisation [sic] and mortality by COVID-19 in Mexico."  *Id*. at ECF pp. 6-7, 10-27.

**B.     Defendants' Opposition**

Defendants oppose the motion.  They submit a declaration signed under penalty of perjury by Mariza Marin, the Assistant Director of Field Operations, Border Security, San Diego, for CBP's the San Diego Field Office, Office of Field Operations.  [Docket No. 18-1 (Marin Decl., Sept. 11, 2020) ¶ 1.]  Marin states that she oversees "planning, implementation, and execution of Border Security programs and other law enforcement activities for the entirety of the [San Diego Field Office]," which includes five land ports of entry, including the San Ysidro Port of Entry.  *Id*. at ¶ 2.

Marin states that on August 1, 2020, Beltran and S.C. "applied for entry at the San Ysidro Port of entry, located in San Ysidro, California."  *Id*. at ¶ 4.  Marin "reviewed CBP record queries and photographs confirming that Beltran [ ] and [S.C.] entered into vehicle primary lane 2 at the San Ysidro Port of Entry as passengers in a vehicle with California license plates . . . on August 1, 2020," and that "[t]he vehicle primary lanes at the San Ysidro Port of Entry cannot be accessed from the U.S. side of the International Boundary."  *Id*. at ¶ 7.  Therefore, Marin has "concluded that the vehicle that Beltran [ ] and [S.C.] were traveling in came from Mexico and drove up to the Port of Entry where the photographs were taken."  *Id*.

Marin states that Beltran and S.C. presented valid Colombian passports and U.S. tourist visas at the Port of Entry.  *Id*. at ¶ 4.  During an interview, Beltran and S.C. "stated they were seeking to go back to San Jose, California."  *Id*.  Based on this information, CBP denied Beltran

4

and S.C. entry "under the Notification of Temporary Travel Restrictions Applicable to Land Ports of Entry and Ferries Service Between the United States and Mexico, 85 Fed. Reg. 31057 (May 21, 2020)" ("Notification"). *Id.* at ¶ 5.  According to Marin, the temporary travel restrictions set forth in the Notification "temporarily limit[ ] the travel of individuals from Mexico into the United States at land ports of entry along the United States-Mexico border to 'essential travel,'" and Beltran and S.C.'s travel "was determined to be non-essential in nature." *Id.*[2]

### C.  Plaintiffs' Reply

The parties filed a stipulation regarding the briefing schedule for this motion, which the court entered as an order on September 4, 2020.  [Docket No. 16.]  Pursuant to that order, Plaintiffs' reply brief was due by September 23, 2020.  *See id.*  Plaintiffs did not file a reply brief by that date, and on October 6, 2020, Plaintiffs filed a motion to accept a "late filed opposition," which the court construes as a motion for leave to accept a late reply brief.  [Docket No. 21.] According to Plaintiffs, they did not timely file their brief due to the parties' attempts "to resolve this matter out of court" and the fact that "it took longer than usual to get documents." *Id.*  They also filed a proposed reply brief on the same date.  [Docket No. 22.]  As Defendants did not object to the late filing, the court grants the request and considers the late-filed reply brief.

Plaintiffs do not appear to contest the statements in Marin's declaration.  Instead, they contend that the temporary travel restrictions at issue are set to expire at some point.  Reply at ECF p. 2.

Plaintiffs also contend that CBP "defac[ed]" Beltran and S. C.'s visas by cutting off the lower right corner of the documents.  *Id.* at ECF p. 4.  Plaintiffs attach photos to the reply brief that appear to depict visas with the lower right corners cut or folded.  [Docket Nos. 22-1, 22-2.] The photos are not authenticated.

---

[2] Marin also states that during Beltran's interview with a CBP officer, "she stated she had been working during the past four months for a moving company in San Jose, CA," and officers found a Social Security card bearing the name "Eleonora Carrero" in her belongings.  Marin Decl. ¶ 6. According to Marin, "an adverse action was warranted" based on this information, but "CBP chose to forgo any adverse action due to the absolute travel ban into Columbia [sic] and instead processed Beltran [ ] and [S.C.] under the non-essential travel restrictions." *Id.*

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D.       Discussion

The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Injunctive relief "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits of the claims; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of hardships tips in their favor; and (4) a preliminary injunction is in the public interest. *Id.* at 20.

Plaintiffs did not submit evidence in support of their motion for a TRO in violation of Local Rule 7-5(a), which provides that "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record." To the extent they seek to rely on the allegations in the petition, the allegations are not supported by evidence because Beltran's declaration was not signed under penalty of perjury. Further, the petition was not verified. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011), *overruled by Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) ("[a] verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief."). Accordingly, Plaintiffs have not established a factual basis for their allegations about being "thrown into Mexico," Mot. for TRO at ECF p. 4, and have failed to refute Defendants' evidence that Beltran and S. C. actually attempted to enter the United States from Mexico and CBP refused them entry.

"The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Here, Plaintiffs have failed to show that they are likely to succeed on their claims as they have not supported the claims with evidence. "Because it is a threshold inquiry, when 'a plaintiff has failed to show the likelihood of success on the merits, [courts] need not consider the remaining three [*Winter* elements].'" *Id.* (quoting *Ass;n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)). Accordingly, Plaintiffs' motion for a TRO is denied.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

III.   **MOTION FOR SUMMARY JUDGMENT**

Defendants move for summary judgment on Plaintiffs' MVA and APA claims.

A.  **Legal Standards**

1.   **MVA and APA**

As noted, Plaintiffs seek relief pursuant to the MVA, 28 U.S.C. § 1361, and the APA, 5 U.S.C. § 706(1), in the form of issuance of a writ of mandamus requiring Defendants to allow Beltran and S. C. to re-enter the United States pursuant to a valid visa.

28 U.S.C. § 1361 is the federal mandamus statute.  It provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus relief is an extraordinary remedy.  It is "only available to compel an officer of the United States to perform a duty if (1) the plaintiff's claim is clear and certain; (2) the duty of the officer 'is ministerial and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986) (internal citations and quotations omitted).

Under the APA, a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . ." 5 U.S.C. § 706(1).  "A court can compel agency action under this section only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 63-64 (2004)).  "The agency action must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'" *Id.* (quoting *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010)). Instead, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* (emphasis in original) (quoting *SUWA*, 542 U.S. at 64).

"Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus

under the MVA, 'in essence,' as one for relief under § 706 of the APA." *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n.4. (1986)). Where, as here, the relief sought is identical under the MVA and the APA, courts may analyze a party's entitlement to relief under the APA. *See id.* ("Because the relief sought is essentially the same, in the form of mandamus, we elect to analyze IMC's entitlement to relief under the APA.").

## 2. Summary Judgment

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id.* at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id.* at 249.

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## B. Discussion

Relying on the Marin Declaration filed in opposition to Plaintiffs' motion for a TRO,

United States District Court
Northern District of California

1    Defendants contend that Beltran and S. C. applied for entry to the United States from Mexico at

2    the San Ysidro Port of Entry.  Marin Decl. ¶¶ 4, 7.  They further contend that Beltran and S. C.

3    were denied entry into the United States pursuant to DHS's Notification, which "temporarily

4    limits the travel of individuals from Mexico into the United States at land ports of entry along the

5    United States-Mexico border to 'essential travel,'" because Beltran and S. C.'s travel "was

6    determined to be non-essential in nature."  *Id*. at ¶ 5.[3]

7         DHS originally published the travel restrictions at issue on March 24, 2020 and has

8    extended them several times.  Notification of Temporary Travel Restrictions Applicable to Land

9    Ports of Entry and Ferries Service Between the United States and Mexico, 86 FR 14813-01, 14814

10   n.2 (Mar. 19, 2021).  The Temporary Travel Restrictions are currently in place through April 21,

11   2021.  *Id*. at 14814.  The July 22, 2020 version of the Notification was in effect on August 1,

12   2020, the date Beltran and S. C. allege they were removed from the United States.  Notification of

13   Temporary Travel Restrictions Applicable to Land Ports of Entry and Ferries Service Between the

14   United States and Mexico, 85 FR 44183-01, 44183 (Jul. 22, 2020) (stating restrictions in effect

15   from Jul. 22, 2020 until Aug. 20, 2020).  It contains the following non-exclusive list of examples

16   of "essential travel":

17   • U.S. citizens and lawful permanent residents returning to the United States;

18   • Individuals traveling for medical purposes (e.g., to receive medical treatment in the United

19     States);

20   • Individuals traveling to attend educational institutions;

21   • Individuals traveling to work in the United States (e.g., individuals working in the farming

22     or agriculture industry who must travel between the United States and Mexico in

23     furtherance of such work);

24   • Individuals traveling for emergency response and public health purposes (e.g., government

25     officials or emergency responders entering the United States to support federal, state, local,

26     tribal, or territorial government efforts to respond to COVID-19 or other emergencies);

27

28   _____
[3] Plaintiffs do not allege that Silveira was denied entry at the border.

9

1
2
3
4
5
6
7
8
9
10
11

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Individuals engaged in lawful cross-border trade (e.g., truck drivers supporting the movement of cargo between the United States and Mexico);

- Individuals engaged in official government travel or diplomatic travel;

- Members of the U.S. Armed Forces, and the spouses and children of members of the U.S. Armed Forces, returning to the United States; and

- Individuals engaged in military-related travel or operations.

*Id*. at 44184.  Travel by individuals "for tourism purposes (e.g., sightseeing, recreation, gambling, or attending cultural events)" does not "fall within the definition of 'essential travel' for purposes of [the] Notification."  *Id*.  The Notification also provides that "the CBP Commissioner may, on an individualized basis and for humanitarian reasons or for other purposes in the national interest, permit the processing of travelers to the United States not engaged in 'essential travel.'"  *Id*. These restrictions are substantively identical to those that are currently in place.  *See* Notification of Temporary Travel Restrictions Applicable to Land Ports of Entry and Ferries Service Between the United States and Mexico, 86 FR 14813-01, 14814-15 (Mar. 19, 2021).

Defendants argue that the undisputed facts set forth in the Marin Declaration show that Beltran and S. C. were denied entry into the United States because their travel did not qualify as "essential" under the Notification.  Accordingly, they argue, Plaintiffs cannot meet the standard for the relief they seek under the APA because Defendants are not legally required to admit Beltran and S. C. into the United States.

Plaintiffs' opposition fails to address Defendants' argument that they were not required to admit Beltran and S. C. into the United States because their travel did not fall within the definition of "essential travel" for purposes of the Notification.  They also do not submit evidence disputing the facts set forth in Defendants' motion.  In fact, they appear to concede that they attempted to enter the United States from Mexico.  *See* Pls.' Opp'n at ECF p. 2 ("culminating in denying them entry into the United States").  Instead, they contend that "Border Patrol destroyed their multiple ten year visa by cutting the bottom right corner off, so that when Petitioners Beltran and her minor daughter attempted to fly into the country, which has no restrictions, they were denied because the visa was defaced."  *Id*. at ECF p. 1.  The relevance of this contention, which was not alleged in the

10

1     petition, is not clear.  Moreover, Plaintiffs do not support this claim or any of the other factual

2     claims in their opposition with admissible evidence.  Plaintiffs again submit the undated

3     declarations by Beltran and Silveira that were attached to the petition, but the declarations do not

4     address the defacing issue.  Further, as they were not sworn to or under oath, and did not comply

5     with 28 U.S.C. § 1746, they cannot be considered for purposes of summary judgment.  *See United*

6     *States v. Richie*, 342 F.3d 903, 909 (9th Cir. 2003) ("In ruling on a motion for summary judgment,

7     a court may substitute an unsworn declaration for a sworn affidavit if the declaration complies

8     with 28 U.S.C. § 1746.  But such documents must be based on 'personal knowledge,' Fed. R. Civ.

9     P. 56(e), and must be 'subscribed by' the declarant, 28 U.S.C. § 1746.").

10          In sum, Plaintiffs do not dispute that Beltran and S. C.'s travel was not "essential travel"

11     for purposes of the temporary travel restrictions set forth in the Notification and have thus failed to

12     demonstrate a genuine dispute of material fact as to whether Defendants were legally required to

13     admit them into the United States.  Accordingly, Plaintiffs have failed to show that allowing

14     Beltran and S. C.  to re-enter the United States is a discrete agency action that Defendants are

15     legally required to take.  *See SUWA*, 542 U.S. at 63 ("the only agency action that can be compelled

16     under the APA is action legally *required*." (emphasis in original)).  Therefore, Defendants are

17     entitled to summary judgment on Plaintiffs' claims.

18  **IV.   CONCLUSION**

19          For the foregoing reasons, Plaintiffs' motion for a TRO is denied.  Defendants' motion for

20     summary judgment is granted.  The Clerk of Court shall close this case.

21

22          **IT IS SO ORDERED.**

23     Dated: March 26, 2021

24

25                             Donna M. Ryu

26                            United States Magistrate Judge

27

28

*United States District Court*
*Northern District of California*